## McKown's Estate (No. 2.)

*Decedent's estates—Judgment note—Delivery—Evidence.*

A judgment note of a decedent in favor of a sister, never delivered in the lifetime of the decedent, but found amongst his papers after his death cannot be sustained as a claim against his estate upon the testimony of a witness to the effect that the decedent had told him three years after the date of the note and at a time when the decedent was hopelessly insolvent, that he had left a note payable to his sister which would be found amongst his papers, and that it represented what he owed his sister, and there is no other testimony in the case to show that the decedent actually owed his sister anything.

Argued Oct. 23, 1900.    Appeal, No. 80, Oct. T., 1900, by Margaret M. Atwell, from decree of O. C. Allegheny Co.,

April T., 1899, No. 51, dismissing exceptions to adjudication in estate of James C. McKown, deceased. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Exceptions to adjudication.

The facts appear by the opinion of Crawford, P. J., specially presiding, which was as follows:

On passing upon exceptions filed to the account of Elizabeth C. McKown, executrix of James C. McKown, deceased, the accountant was surcharged with some $10,000 received by her as executrix from the Manhattan Life Insurance Company of New York. As the matter stood before the court at that time, the Manhattan Life Insurance Company was the only creditor of James C. McKown to present a claim upon this fund, and an award was made to them according to the decree then entered. But, as was suggested in the opinion then filed, numerous other creditors of the insolvent estate of the above named decedent came forward with claims and the matter was opened for the hearing and adjudication of all such proper claims as might be made known to the court, before a final decree of distribution should be entered. Among the many claims of creditors now presented to the court is one of Mrs. Margaret M. Atwell, a sister of James C. McKown, deceased. Mrs. Atwell's claim is for $19,500, and is based upon a note dated October 23, 1893, drawn in her favor for that amount and signed by James C. McKown, but which note was never delivered by McKown in his lifetime, but was found by his representatives among his papers, after his death, and by them turned over to Mrs. Atwell. This claim is vigorously contested by other creditors of the insolvent estate, on the ground that it was not shown at the hearing that there was any sufficient consideration for the same, or that James C. McKown was indebted to his sister in such an amount.

Mr. Edward O'Neil, examined with reference to this note, said: "I think in the fall of 1896, Mr. McKown and I were out on our wheels; he said he had left a note payable to his sister Maggie, which, in case of his death, I would find among his papers; that it represented what he owed his sister; and if

there was any estate to be divided he would like me to see that it was given to his sister and that she be given opportunity to present it for distribution in whatever estate there might be." As far as the testimony before us goes, the only way in which it is pretended that James C. McKown was or could be indebted to his sister, Mrs. Atwell, was, that in the trust of administration in the estates of their father, James McKown, and mother, Frances S. McKown, and a brother, Albert W. McKown, James C. McKown had received the interest or share of said estates belonging to his sister, Mrs. Atwell, and had never accounted to her for the same.

Their father, James McKown, died March 31, 1891, and his estate was settled up in 1892. Two inventories were filed by James C. McKown, his administrator, one on June 6, 1891, and one on September 12, 1891. The entire estate amounted to $18,594.08. A final account was filed at No. 209, September term, 1892. The audit had upon the same shows a distribution as follows: to Mrs. Frances C. McKown, widow, one third, $6,198.03; to Mrs. Margaret M. Atwell, Mrs. Eliza A. Cooke, James C. McKown, A. W. McKown, and Howard T. McKown, a two fifteenths to each, giving to each heir $2,479.21. Mrs. Atwell, on cross-examination, admitted that she had received at least $2,476 of her share from her father's estate. She further contended that her mother, Frances C. McKown, never received her third of the personal estate of her deceased husband, and that her brother, A. W. McKown, never received his share in said estate, but that these interests were retained by James C. McKown, the representative who settled up said estate. She further admits that A. W. McKown at the time of his death was in debt to his brother, but to what extent she fails to state.

A. W. McKown died in March, 1893. His mother, Frances C. McKown, died September 1 of the same year. An account was filed in A. W. McKown's estate by the mother, Frances C. McKown, at No. 9, November term, 1893, showing a balance of $1,039.49, and audited, showing a transfer of that balance to Margaret M. Atwell, as administratrix d. b. n. Margaret M. Atwell filed her account at No. 20, October term, 1894, showing a balance in her hands as administratrix aforesaid of $851.53. So far as the records show, this last balance remains in the

hands of Mrs. Atwell, and has never been audited or distributed.

The final audit and account of Frances C. McKown, of which Charles A. Atwell, the husband of Margaret M. Atwell, was executor, shows an estate of $3,011, and a distribution of $3,000, which, according to the will of the decedent, was divided equally between James C. McKown and Margaret M. Atwell. The record shows the receipt of each of these legatees for their respective shares. From this it appears that Mrs. Atwell had originally but a two-fifteenths interest in her father's estate. The entire estate, as we have seen, amounted to $18,594.08. At least $2,476 of her father's estate she admits she received. The amount awarded to her by her mother's will she also received. The balance of $851.53 of her brother, A. W. Mc-Kown's estate, and which was in her hands as administratrix d. b. n., she has never paid out or distributed, so far as the evidence before us shows.

How, then, it is possible for her brother, James C. McKown, under such facts and showing, to owe her the sum of $19,500, and on account of her interest in said estates is simply beyond our power to conceive. At the time James C. McKown called Mr. O'Neil's attention to the note he had drawn in favor of his sister, he knew that he was hopelessly insolvent. His declaration to Mr. O'Neil was, that "if there was any estate to be divided, he would like to see the note given to his sister, and that she be given an opportunity to present it for distribution in whatever estate there might be." The note itself, of course, not having been delivered by McKown in his lifetime, could only be considered, not as a debt itself, but merely as an evidence of debt, in connection with such other facts and circumstances as might go to support the claim of Mrs. Atwell. To our mind, the facts offered in that line do not with certainty support Mrs. Atwell's claim of indebtedness on the part of her brother, in any amount whatever, and they clearly negative the idea that he could have owed her any such sum as that mentioned in the note drawn by McKown.

In our opinion, the note then, not only fails to aid her in supporting a claim of indebtedness, but in connection with all that appears in all the testimony before us in these hearings, as to McKown's dealings with his creditors, and in connection

with the facts shown, in particular, with this note, her claim is discredited altogether.

In support of Mrs. Atwell's claim, we have been cited to the case of Gilmor's Estate, 158 Pa. 186, but that case we regard as differing from the case at bar in the essential and material facts which induced the auditor to uphold the claim of Eliza Gilmor.

From what we have already said, it follows that the claim of Mrs. Atwell will not be allowed in this distribution.

*Errors assigned* were in dismissing exceptions to adjudication.

*William M. Benham,* with him *Charles A. Woods,* for appellant.—Declarations against interest are to be taken as true, and construed most strongly against the declarant: Gabler's App., 5 Cent. Repr. 314; Shirk's App., 14 Atl. Repr. 413; Toner v. Taggart, 5 Binney, 486; Fox's App., 11 Atl. Repr. 228; Harrisburg Bank v. Tyler, 3 W. & S. 373; Haas's Est., 3 Pa. C. C. R. 345; Arnold's Est., 5 Phila. 215; Burton's Est., 15 Pa. C. C. R. 367; Rindt's Est., 2 Lehigh Valley Rep. 246; Wilkinson's Est., 192 Pa. 117; Nauman's App., 116 Pa. 505; Robert's App., 126 Pa. 102; McCain v. Peart, 145 Pa. 516; Johnston v. McCain, 145 Pa. 531; Taylor v. Gould, 57 Pa. 152.

*M. A. Woodward,* for appellee.

Per Curiam January 7, 1901:

The appellant presented a claim against the estate of her brother, James C. McKown, for the sum of $19,700. It was in form a judgment note payable on demand and dated Pittsburg, October 23, 1893. McKown died June 2, 1897, and some time after that the note was found among his papers by O'Neil who delivered it to the appellant. A vigorous effort was made to establish the validity of the claim that it might be allowed to participate in the distribution of the insolvent estate. But the evidence submitted to support the claim was not sufficient to establish the existence of a bona fide indebtedness of $19,700 due on demand from McKown to Mrs. Atwell. Her testimony did not contain an intimation of a loan from her to

her brother James at any time.    All that she said on the sub-
ject was that James told her she had never received from her
father, mother or brothers her portion of their respective estates.
In her cross-examination she admitted that she had received her
share of the real and personal estate of her father.    It also ap-
pears that under the will of her mother she received one half of
her estate and James received the other half of it.    As admin-
istratrix d. b. n. of A. W. McKown's estate, she received the
balance in the possession of her mother at the time of her death,
and nothing appears upon the records showing a division or dis-
tribution of it.    The conversation between McKown and O'Neil
while out on their wheels in 1896 was certainly not suffi-
cient to entitle the note to participate in the distribution of the
insolvent estate.    With these observations relating to the
evidence, we affirm the decree on the elaborate and satisfactory
opinion of the learned judge of the court below.    Decree
affirmed and appeal dismissed at the costs of the appellant.